UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

# 13 CV 6086

IRINA KANDERSKAYA,

                                 Plaintiff.

— against —

THE CITY OF NEW YORK; NEW YORK CITY
POLICE COMMISSIONER RAYMOND KELLY, in
his official capacity; NEW YORK CITY POLICE
OFFICER RONALD PEREIRA, in his official and
individual capacity; NEW YORK CITY POLICE
OFFICER ZAYDA NATAL, in her official and
individual capacity; and NEW YORK CITY POLICE
OFFICER JOHN P. MOGULA, in his official and
individual capacity.

                                 Defendants.



Civil Action No.

**COMPLAINT**
**DEMAND FOR JURY TRIAL**

     The Plaintiff, IRINA KANDERSKAYA ("Kanderskaya" or "the Plaintiff"), by her

attorney, Garry Pogil, complaining of the Defendants, THE CITY OF NEW YORK ("City");

POLICE COMMISSIONER RAYMOND KELLY, in his official capacity ("Commissioner" or

"Commissioner Kelly"); NEW YORK CITY POLICE OFFICER RONALD PEREIRA

("Pereira"), in his official and individual capacity; NEW YORK CITY POLICE OFFICER

ZAYDA NATAL ("Natal"), in her official and individual capacity; and NEW YORK CITY

POLICE OFFICER JOHN P. MOGULA ("Mogula"), in his official and individual capacity

(collectively "the Defendants"), alleges as follows.

1

## NATURE OF CLAIMS

1.    The Defendants have violated the Plaintiff's rights secured by the Fourth and Fourteenth

Amendments of the United States Constitution, Civil Rights Act of 1871, 42 U.S.C. §1983, and

the Constitution and laws of the State of New York.

2.    The Defendants have implemented, and are continuing to carry out, a policy, practice

and/or custom of arresting — without probable cause — females, who are victims of domestic

violence, where the abuser-complainant has filed a false complaint with the New York Police

Department ("NYPD") against the victim (such type of an arrest is referred hereinafter as a

"Retaliatory Arrest").

3.    The Defendants have knowingly and recklessly abandoned their duty, imposed by law, to

investigate further — beyond merely taking the word of the abuser-complainant when factors are

present that reveal a motive on the part of the abuser to file a false complaint with the NYPD —

with such actions on the part of the Defendants being contrary to the principles delineated in

Mistretta v. County of Suffolk, et al. 5 F.Supp.2d 128 (1998).  Moreover, despite having notice

of such disturbing trend, since at least the year 2001, where innocent victims of domestic

violence were falsely arrested, and despite recommendations being made to NYPD to implement,

for example, the analysis of primary physical aggressor factors in "retaliatory arrest" situations,

NYPD has not adopted a policy to address "retaliatory arrests."

4.    Upon information and belief, the Plaintiff has suffered serious and real harm to her

reputation and standing in her community, and has suffered extreme emotional distress.  The

Defendants' conduct harmed the Plaintiff's character irreparably.  The Defendants' conduct has

caused irreparable harm to the Plaintiff's family.  The Defendants acted maliciously and with

2

callous disregard of the disastrous effects of their actions. The Plaintiff is now seeking, compensatory and punitive damages for the harm caused by the Defendants. Additionally, the Plaintiff is seeking declaratory relief.

5.      The NYPD's pervasive constitutional violations described herein are directly and proximately caused by policies, practices and/or customs created, implemented and/or ratified by the City and Commissioner Kelly. The Defendants, City and Commissioner, acted with blatant disregard to the constitutional rights of female victims of domestic violence, especially in cases of "Retaliatory Arrests" by: (a) creating, implementing and/or supporting a policy that, by purpose and/or effect, blatantly contradicts federal mandates in situations where an abuser-complainant files a false report with the NYPD where NYPD knows, or reasonably should know, that such abuser has a motive to be untruthful; (b) failing to properly train and supervise NYPD officers; (c) failing to initiate an investigation, and failing to bring the individual who filed a false police report to justice; (d) failing to establish an effective inter-borough system of communication to prevent multiple false arrests; and (e) failing to devise a policy to assist police officers in identifying false or exaggerated complaints in the sphere of domestic violence.

## PARTIES

6.      The Plaintiff, Kanderskaya, is a young woman who currently resides in Queens, New York. The Plaintiff is a victim of domestic violence who has recently obtained a divorce from her abusive husband in Queens County (Docket #15985/2012), and she obtained a two-year full stay-away order of protection against her former husband. The Plaintiff's previous name while

she was married was Irina Salem, with such name appearing on previous documents relating to her arrests that are the subject of this lawsuit. Furthermore, upon information and belief, the Plaintiff is a student and an active participant in the Red Cross charitable organization.

7.    The Defendant, City, is a municipal corporation, organized under the laws of the State of New York, and as such, the City is a "person" under 42 U.S.C. §1983. The Defendant, City, maintains the NYPD. The Defendant, City, is, or at all times relevant to this complaint, was the employer of Commissioner Kelly, Pereira, Natal and Mogula.

8.    The Defendant, Commissioner Kelly, is and has been, at all relevant times to this complaint, the employee of the City and Commissioner of NYPD. Commissioner Kelly is the principal participant in instituting policies, practices and/or customs of the NYPD. Furthermore, Commissioner Kelly is ultimately responsible for the training and supervision of police officers of NYPD, including Defendants, Pereira, Natal and Mogula. As such, Commissioner Kelly is the guarantor of constitutional rights of the public in their dealings with the NYPD. Commissioner Kelly knew, or should have known, of the unconstitutional practices prevalent in the sphere of domestic violence, namely "retaliatory arrests" as described in this complaint and authorized and/or showed reckless disregard for existence of such violations.

9.    The Defendant, Pereira, is employed, and has been employed at all relevant times to this complaint, by the City as detective in the NYPD, 68th police precinct, Brooklyn, New York. Upon information and belief, Pereira's shield number is 19324.

4

10.     The Defendant, Natal, is employed, and has been employed at all relevant times to this complaint, by the City, as, upon information and belief, a detective in the NYPD, 68th police precinct, Brooklyn New York.  Upon information and belief, Natal's shield number is 4457.

11.     The Defendant, Mogula, is employed, and has been employed at all relevant times to this complaint, by the City, as a detective in the NYPD, Midtown North Precinct, New York, New York.


## BASIS FOR JURISDICTION

12.     This Court has jurisdiction under 28 U.S.C. §§1331 and 1343(a)(3) and (4), as this action seeks relief for the violation of the Plaintiff's constitutional and civil rights.

13.     Additionally, the Plaintiff invokes this Court's supplemental jurisdiction, pursuant to 28 U.S.C. §1367(a), as to all state constitutional and state law claims that are so related to the claims within the original jurisdiction of this Court that such claims form part of the same case or controversy.

14.     This Court has jurisdiction over the Plaintiff's claim for declaratory relief under 28 U.S.C. §§2201 and 2202, and Rule 57 of the Federal Rules of Civil Procedure.


## VENUE

15.     Venue is proper in the United States District Court for the Southern District of New York, pursuant to 28 U.S.C. §1391(b) and (c).

## JURY DEMAND

16.    The Plaintiff demands a trial by jury as to all of the claims raised in this complaint.


## FACTUAL ALLEGATIONS

17.    The Plaintiff, Kanderskaya, is a young woman of good moral character.  She is actively

involved with the Red Cross organization and has been since 2010.  Upon information and

belief, Kanderskaya's most notable projects with the Red Cross included Hurricane Sandy and

Hurricane Irene relief efforts, multiple marathons and blood drives.  Additionally, upon

information and belief, from December of 2010, every Saturday, Kanderskaya assisted in various

fire relief efforts.

18.    Upon information and belief, on or about July 9th, 2012, Kanderskaya appeared at the 68th

police precinct in Brooklyn.  Upon arrival to said precinct, Detective Pereira told Kanderskaya

that her husband called the police and said that Kanderskaya stated to him that if he tried to

divorce Kanderskaya, she would kill him.  Kanderskaya immediately denied making such

statement and showed Pereira phone text messages between Kanderskaya and her husband that

did not evidence any threats but instead showed that Kanderskaya was the one who stated that

she no longer wanted to be married to her husband.  Furthermore, Kanderskaya stated to Pereira

that she had already made arrangements for an alternate place of residence and provided Pereira

with a name of a witness to corroborate such.  Kanderskaya further stated that her husband was

retaliating against her and made a false police complaint.  Upon information and belief, Pereira

acknowledged to Kanderskaya that she was the one who tried to escape from her husband.

6

Furthermore, Kanderskaya told Pereira that she was the one who was being emotionally abused by her husband.

19.     Upon information and belief, on or about July 9th, 2012, Kanderskaya provided names of witnesses who could corroborate her story. Pereira said to Kanderskaya that he would call them and return. Upon information and belief, without contacting the Plaintiff's witnesses, and without conducting any meaningful investigation, Pereira, in violation of his duty to investigate, arrested Kanderskaya without probable cause. The Plaintiff did not consent to being arrested and demanded to know the basis of the arrest. Pereira simply stated that it was Kanderskaya's word against her husband's.

20.     Upon information and belief, the Plaintiff has spent approximately thirty three (33) hours incarcerated as a result of the arrest of July 9th, 2012. The Plaintiff's criminal case arising out of said arrest was dismissed on or about February 7th, 2013 in her favor.

21.     On or about July 12th, 2012, Kanderskaya called the 68th police precinct in Brooklyn to file a complaint against Pereira but was told that he was on vacation.

22.     Upon information and belief, on or about July 21st, 2012, three police officers appeared at the Plaintiff's home residence. The female officer, Natal, told Kanderskaya that she needed to talk. When said officers entered the Plaintiff's home, the Plaintiff was placed under arrest by Natal and was taken to the 68th police precinct in Brooklyn. When Kanderskaya asked what happened, Natal stated that Kanderskaya's husband called the precinct and told police that some unidentified man called him from a blocked telephone number the day before and he heard the Plaintiff in the background screaming that if he tried to divorce her, Kanderskaya would blow up

7

her husband's car.  Kanderskaya immediately denied these allegations and said that she attended

a concert the day before in New Jersey.  Natal said that Kanderskaya still had access to her

phone.  Kanderskaya further stated that she was verbally and emotionally abused by her husband

and was thinking of leaving him.   Upon information and belief, Natal stated, "I understand, and

I believe you, but I have no discretion in such cases but to arrest you."  Upon information and

belief, Natal further added: "I understand that many women are abused."  The Plaintiff stated

that she did not consent to being arrested and did not understand why there was no investigation

conducted and that simply her now ex-husband's word was being taken as absolute truth.

Kanderskaya informed the officers that her husband is making false statements as retaliation for

her desire to leave him.  Upon information and belief, irrespective of such, the officers did not

take further action to investigate and Natal arrested the Plaintiff without probable cause.

23.     Upon information and belief, while being transported to the police precinct, on or about

July 21st, 2012, one of the officers eyed the Plaintiff in a derogatory manner, smirking.

24.     Upon information and belief, the Plaintiff was subsequently incarcerated for

approximately three (3) days as a result of the above-described second arrest. As the Plaintiff

was leaving Riker's Island, she noticed that her husband was waiting for her with another man,

her husband's cousin.  Kanderskaya's husband's cousin stated that he was "sorry for everything

that we have done to you. "  Kanderskaya became scared and ran back to Riker's Island and told

one of the officers that her husband took out an order of protection against her and that she was

afraid of being arrested because he was outside waiting for her.  Despite making such statements,

upon information and belief, nobody at Riker's Island helped the Plaintiff.  Upon information

8

and belief, the criminal case arising out of said arrest was dismissed on or about February 7th, 2013 in the Plaintiff's favor.

25.     On or about July 30th, 2012, the Plaintiff wrote a letter to the office of Mayor Michael Bloomberg asking for help in relation to the above described; however, the Plaintiff received no response.

26.     Upon information and belief, on or about July 29th, 2012, the Plaintiff was walking with her friend when her husband jumped in front of them and accused the Plaintiff of cheating on him.  The Plaintiff ran into the store (Liberty Bagel & Grocery at 708 9th Ave, New York, NY 10019) and called the police and explained that her husband has an order of protection against her and he is trying to get her arrested again by making it seem as though she is following him. Upon information and belief, when the police arrived, they stated, in sum and substance, after interviewing the surrounding witnesses that everything was alright and did not take any action. The police did not take any action despite the Plaintiff's offer to show a video of how her husband was running in and out of the aforementioned store threatening her.

27.     Upon information and belief, on or about July 30th, 2012, Kanderskaya saw Detective John P. Mogula's business card in her door.  Kanderskaya's attorney called Detective Mogula who said that he had to arrest Kanderskaya.  Kanderskaya went to the precinct to meet with Detective Mogula.  Detective Mogula said that Kanderskaya's husband called him on or about July 29th, 2012 at 4:10pm and said that Kanderskaya called him and threatened to kill him. Kanderskaya told Mogula that her abusive husband keeps making false claims to the police and that he keeps following her to make it seem as though she violated an order of protection. Kanderskaya said that she did not understand why the police are refusing to conduct even a

9

minimal investigation.  Kanderskaya offered to show Detective Mogula video evidence from the above-described grocery store.  Detective Mogula said, "I believe you" and placed Kanderskaya under arrest, to which Kanderskaya did not consent, without probable cause, and without conducting an adequate investigation.

28.     Upon information and belief, while walking to be fingerprinted, Detective Mogula said to Kanderskaya that he has no discretion but to arrest her given the volume of domestic violence cases in New York City.  Upon information and belief, the Plaintiff was incarcerated at Riker's Island for approximately 144 hours as a result of the above-described third arrest.  Upon information and belief, the criminal case arising out of said arrest was dismissed on or about May 9th, 2013 in the Plaintiff's favor.

29.     Upon information and belief, on or about December 18th, 2012, the Defendant, Pereira, called the Plaintiff requesting to speak to her.  The Plaintiff returned Pereira's telephone call; Pereira said to come to the precinct to show "documents" to prove that she was attending court. Upon information and belief, when the Plaintiff called back to verify from Pereira exactly why she needed to appear at the precinct, Pereira angrily stated: "Listen, if you don't show up today, don't make me mad, and when I find you, you're not gonna like it."  Upon information and belief, after Pereira made such statements, the Plaintiff was physically shaking and in shock and became fearful for her safety.  The Plaintiff subsequently contacted an organization entitled "STEPS" for protection.  Upon information and belief, such organization called the 68th police precinct in Brooklyn, New York and left a message for Pereira – he never called back.