UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------ x
:
IRINA KANDERSKAYA, :
:
                          Plaintiff, :
:
    -against- :
:
THE CITY OF NEW YORK, NEW YORK :
POLICE COMMISSIONER RAYMOND KELLY, :
in his official capacity, NEW YORK CITY :
POLICE OFFICER RONALD PEREIRA, in his :
official and individual capacity, NEW YORK CITY :
POLICE OFFICER ZAYDA NATAL, in her :
official and individual capacity, and NEW YORK :
CITY POLICE OFFICER JOHN P. MOGULA, in :
his official and individual capacities, :
:
                          Defendants. :
------------------------------------------------------------ X

**ORDER AND OPINION GRANTING MOTION FOR JUDGMENT ON THE PLEADINGS**

13 Civ. 6086 (AKH)

ALVIN K. HELLERSTEIN, UNITED STATES DISTRICT JUDGE:

        Plaintiff Irina Kanderskaya complains that she was arrested by New York City Police Department ("NYPD") Officers three times without probable cause. Each of these arrests was prompted by phone calls that Khaled Salem, Kanderskaya's former husband, made to the NYPD. Salem falsely told the NYPD that Kanderskaya had threatened to injure him. Kanderskaya contends that each time she was arrested, she explained to the NYPD officers who arrested her that she was innocent and that it was, in fact, her husband who had abused her, but that she was arrested as a result of the NYPD's policy of automatically arresting individuals who have been accused of domestic violence.

        Kanderskaya asserts claims pursuant to 42 U.S.C. § 1983 and New York State law against the individual police officers who arrested her, Defendants Ronald Pereira, Zayda Natal, and John P. Mogula. She also asserts § 1983 claims against New York City (the "City") and the

1

NYPD's former-commissioner, Raymond Kelly, based on allegations that the NYPD promulgated unlawful policies and practices regarding arrests in purported domestic violence cases.

Before me is the Defendants' motion for judgment on the pleadings, pursuant to Federal Rule of Civil Procedure 12(c). For the following reasons, their motion is granted and the complaint is dismissed.

## STANDARD OF REVIEW

Rule 12(c) motions for judgment on the pleadings are governed by the same standard as motions to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). *See Graziano v. Pataki*, 689 F.3d 110, 114 (2d Cir. 2012). Thus, I consider only "the complaint, the answer, any written documents attached to them, and any matter of which the court can take judicial notice for the factual background of the case." *Roberts v. Babkiewicz*, 582 F.3d 418, 419 (2d Cir. 2009). In this case, I have taken notice of the police reports attached to Defendants' Answer, for the fact that the reports existed, but not for the truth of the facts set forth in the reports. *See Vasquez v. City of New York*, 99 CIV. 4606 (DC), 2000 WL 869492, at *1 n. 1 (S.D.N.Y. June 29, 2000) (considering police reports); *Wims v. New York City Police Dep't*, 10 CIV. 6128 PKC, 2011 WL 2946369, at *2 (S.D.N.Y. July 20, 2011) (same). The police reports are consistent with the allegations in Kanderskaya's complaint.

I accept as true the facts alleged in the complaint and draw all reasonable inferences in the plaintiff's favor. *Johnson v. Rowley*, 569 F.3d 40, 43 (2d Cir. 2009). To survive a Rule 12(c) motion, Kanderskaya's "complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Id.* at 44 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

## BACKGROUND

With the standard of review in mind, the following is a summary of the pertinent facts of record, with the facts alleged in Kanderskaya's complaint accepted as true and with all reasonable inferences drawn in her favor.

On July 4, 2012, Salem telephoned the NYPD and (falsely) reported that his wife, Kandeskaya, had made numerous phone calls threatening to have him killed unless he halted the divorce proceedings against her. Answer, Ex. A; Complaint at ¶ 18.

On July 9, 2012, Kanderskaya went to the 68th police precinct in Brooklyn. Complaint at ¶ 18. There, she was met by Detective Pereira who told Kanderskaya about her husband's complaint. *Id.* Kanderskaya denied making any threatening phone calls and tried to convince Pereira that in fact she wanted the divorce. *Id.* In order to persuade Pereira, Kanderskaya showed him text messages indicating that it was Kanderskaya who wanted the divorce. *Id.* She also told Pereira that she had arranged to live away from her regular home, and identified third parties who would confirm this. *Id.* After hearing from Kanderskaya, Pereira acknowledged that she was emotionally abused by her husband and had in fact tried to escape from him. *Id.* However, Pereira then proceeded to arrest Kanderskaya—without taking any efforts to further investigate the case—stating that it was Kanderskaya's word against her husband's. *Id.* at ¶ 19.

Kanderskaya spent the next 33 hours incarcerated. *Id.* at ¶ 20. The next day (July 10, 2012), the New York Supreme Court issued a temporary order of protection against Kanderskaya, directing her to stay away from Salem, his home, and his place of business. Answer, Ex. B. Kanderskaya was charged with committing a crime, but the case against her was dismissed on February 7, 2013. Complaint at ¶ 20.

On July 19, 2012, Salem again telephoned the NYPD and complained that Kanderskaya had been making threats against him. Answer, Ex. C; Complaint at ¶ 22. This time, Salem (falsely) claimed that a third party had, at Kanderskaya's request, threatened to blow up his car unless he dropped the charges against Kanderskaya. Answer, Ex. C.

On July 21, 2012, Officer Natal and two other police officers came to Kanderskaya's home. Complaint at ¶ 22. Kanderskaya again tried to persuade the officers that she had not made the telephone call, and that she was in fact abused by her husband. *Id.* She told the officers that she could not have made the phone call because she had attended a telephone call in New Jersey the day before. *Id.* Officer Natal stated that she believed Kanderskaya, but said that she "ha[d] no discretion in such cases but to arrest you." *Id.*

Kanderskaya spent the next three days in prison. *Id.* at ¶ 24. She was charged with committing a crime, but the criminal charges against her were dismissed on February 7, 2013. *Id.*

On July 29, 2012, Salem confronted Kanderskaya in the street and accused her of cheating on him. *Id.* at ¶ 26. Kanderskaya ran into a store and called the NYPD, and explained that her husband had an order of protection against her and was trying to get her arrested by making it seem as though she was following him. *Id.* She took a video of Salem running in and out of the store, threatening her. *Id.* The police did not take any action. *Id.*

That same day, Salem again telephoned the NYPD and (falsely) reported that he had a received a phone call from his wife, who had threatened to kill him. Answer, Ex. D; Complaint at ¶ 27.

On July 30, 2012, Kanderskaya was again contacted by the NYPD, this time by Detective Mogula. Complaint at ¶ 27. Kanderskaya told Mogula that her abusive husband kept

4

on making false claims against her, and offered to show him a video of her husband threatening her. *Id.* Mogula stated that he believed Kanderskaya, but then proceeded to arrest her. *Id.* He too told Kanderskaya that he had no discretion but to arrest her. *Id.* at ¶ 28.

Kanderskaya spent the next six days in prison. *Id.* The criminal charges against her were dropped on May 9, 2013. *Id.*

Kanderskaya contends that her experience of being arrested by the NYPD based on false claims by her husband is a result of the NYPD's policies. *Id.* at ¶¶ 31-35. Referencing a study of NYPD arrests in domestic violence cases by the Urban Justice Center, she contends that the NYPD has a policy of automatically arresting individuals accused of committing domestic violence without conducting investigation, even where there is a motive for an abuser to file false complaints against his victim. *Id.* at ¶ 32.

## DISCUSSION

Kanderskaya contends that the Defendants have violated her Fourth Amendment rights by wrongfully arresting her without probable cause.

### A. Claims against Raymond Kelly:

As an initial matter, I dismiss Kanderskaya's claims against Kelly because they are duplicative of her other claims against New York City. Kanderksaya's claims against Kelly are against him in his (former) official capacity, as an officer of the City. "[A] § 1983 suit against a municipal officer in his official capacity is treated as an action against the municipality itself." *Coon v. Town of Springfield, Vt.,* 404 F.3d 683, 687 (2d Cir.2005). Kanderskaya's claims against Kelly are therefore redundant because they are "duplicative of [her] claims against the City." *Rodriguez v. Knapp,* 12 CV 3253 CBA CLP, 2012 WL 5466159 (E.D.N.Y. Nov. 8, 2012). Accordingly, Kanderskaya's claims against Kelly are dismissed with prejudice. *Id. See*

*also Davis v. Stratton,* 360 F. App'x 182, 183 (2d Cir. 2010) (unpublished) (dismissing claims against a municipal officer in the officer's official capacity as duplicative); *Hobbs v. Police Officers of City of New York,* 10 Civ. 5717 SHS HBP, 2014 WL 502030, at *8 (S.D.N.Y. Feb. 6, 2014) (Report & Recommendation) (recommending same).

## B. Section 1983 Claims against Officers Pereira, Natal and Mogula:

Kanderskaya claims that Officers Pereira, Natal and Mogula arrested her without probable cause in violation of the Fourth Amendment's guarantee of freedom from unreasonable searches and seizures. The existence of probable cause at the time of arrest is a complete defense to a § 1983 claim based on wrongful arrest. *See Weyant v. Okst,* 101 F.3d 845, 852 (2d Cir. 1996); *Calamia v. City of New York,* 879 F.2d 1025, 1032 (2d Cir. 1989).[1] Moreover, where probable cause does not exist, an arresting officer enjoys qualified immunity from suit if there is "arguable probable cause to arrest," that is, if the officer's belief that probable cause exists is objectively reasonable or if reasonably competent officers could disagree whether probable cause to arrest exists. *Ackerson v. City of White Plains,* 702 F.3d 15, 22 (2d Cir. 2012).

"An officer has probable cause to arrest when he or she has knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime." *Jaegly v. Couch,* 439 F.3d 149, 152 (2d Cir. 2006) (quotation omitted).

---

[1] Kanderskaya also asserts claims based on malicious prosecution. Probable cause is a complete defense to a malicious prosecution claim. *See Weyant,* 101 F.3d at 852. The difference between wrongful arrest and malicious prosecution is that a wrongful arrest claim is based on whether probable cause existed at the time the plaintiff was arrested, whereas malicious prosecution is based on whether probable cause existed at the time the prosecution of the plaintiff began. Since, Kanderskaya does not allege that there was any difference in the facts known to the police officers between arrest and arraignment, I analyze only the existence of probable cause at the time of her arrests. *See Carthew v. C'nty. of Suffolk,* 709 F. Supp. 2d 188, 202 (E.D.N.Y. 2010) ("[I]f the police had probable cause to arrest, a plaintiff in a malicious prosecution case must show that facts emerged following the arrest to vitiate probable cause.").

"The existence of probable cause as a complete defense to a claim of false arrest 'may be determinable as a matter of law if there is no dispute as to the pertinent events and the knowledge of the officers'; otherwise, a factual determination is required." *Wang v. City of New York*, 05 Civ. 4679 AKH, 2008 WL 2600663, at *2 (S.D.N.Y. June 26, 2008) (quoting *Weyant*, 101 F.3d at 852).[2]

In this case, there is no dispute that each time Kanderskaya was arrested, the arresting officer was relying on Salem's phone call to the NYPD. In those phone calls, Salem complained that Kanderskaya had threatened to kill him. Kanderskaya contends that the arresting officers did not have probable cause, since she explained to each arresting officer that her husband was lying, giving the officers reasons to doubt the truth of Salem's complaint. This, she contends, triggered an obligation to investigate further before arresting Kanderskaya.

It is well-established that an officer normally has probable cause to arrest "if he received his information from some person, normally the putative victim or eyewitness, who it seems reasonable to believe is telling the truth." *Miloslavsky v. AES Eng'g Soc., Inc.*, 808 F. Supp. 351, 355 (S.D.N.Y. 1992) *aff'd*, 993 F.2d 1534 (2d Cir. 1993). But, this rule comes with a caveat: "victim complaints ordinarily establish probable cause *absent circumstances that raise doubts as to the victim's veracity*." *Mistretta v. Prokesch*, 5 F. Supp. 2d 128, 133 (E.D.N.Y. 1998) (quotation omitted; emphasis added). Thus, where there is reason to doubt the truth of the

---

[2]   Defendants argue that they should be immune from suit, because they were required to arrest Kanderskaya under New York state law, *see* N.Y. C.P. L. §§ 140.10(4)(c), 530.11(1), and because they might have been held liable for any injury Kanderskaya inflicted on Salem had they failed to arrest her. These arguments are entirely irrelevant to the probable cause analysis. If a state law (or policy) requires police officers to make arrests without probable cause, that "law is not a *defense* to liability under federal law; it is a *source* of liability under federal law." *Quinones v. City of Evanston, Ill.*, 58 F.3d 275, 277 (7th Cir. 1995) (emphasis in original).

complainant, the police need to conduct a further investigation into a complaint before they can be said to have probable cause.

For example, in *Mistretta* the court noted that a police officer might have had reasons to doubt an individual's accusation that her husband had broken into her house: divorce proceedings can be nasty, and an individual might complain to the police because of an axe to grind. But, the court concluded, the police officer did have probable cause because he investigated the complaint before arresting the accused husband. *Id.* at 134. *Accord Fuller v. M.G. Jewelry*, 950 F.2d 1437, 1444 (9th Cir. 1991) (before they could lawfully arrest suspect, "police officers had a duty to conduct an investigation into the basis of the witness' report"); *Oliveira v. Mayer*, 23 F.3d 642, 647-48 (2d Cir. 1994) (citing *Fuller*).

However, the facts in the record do not establish that the police officers could not rely on Salem's phone calls.

Kanderskaya, citing *Mistretta*, contends that the police officers should have been wary of her husband's claims because the police knew that she and Salem were divorcing, which raised the specter of false claims. But, the very fact that the parties were in the process of divorcing also lent credibility to Salem's story that his wife had threatened him *because* of marital discord. In *Mistretta*, the police were able to revisit a crime scene in order to conduct further investigation; whereas in this case, the police sought to arrest the alleged perpetrator of domestic violence before there was a crime scene. Accordingly, *Mistretta* is inapposite: the fact that Salem and Kanderskaya were getting divorced did not mean that the police officers could not rely on Salem's statements without conducting an investigation.

Kanderskaya tried to persuade the police officers that she was, in fact, the victim. But an arrestee's protestations of innocence will not defeat probable cause. *See Mistretta*, 5 F.

8

Supp. 2d at 135 (Arrestee's denial of guilt "would not have stripped the circumstances of probable cause to arrest him. It is hardly uncommon for people suspected of crimes to deny their involvement."); *Krause v. Bennett*, 887 F.2d 362, 372 (2d Cir.1989) ("Once officers possess facts sufficient to establish probable cause, they are neither required nor allowed to sit as prosecutor, judge or jury."). The police were not required to credit Kanderskaya's assertions that she had moved out of the house and had not made any threatening phone calls. The text messages that Kanderskaya showed to Officer Pereira indicated that she had asked her husband for a divorce, contradicting Salem's claims that it was Salem who wanted to get divorced. But, marital disputes can be chaotic and tumultous. A spouse who wants divorce one day, may want to fight for the marriage the next. Thus the text messages did not undermine the credibility of Salem's complaint that Kanderskaya had threatened him. And the video that Kanderskaya attempted to show to Mogula, depicting Salem threatening Kanderskaya, would not have proven that she did not threaten Salem: in some domestic violence situations, both spouses threaten each other.[3]

Furthermore, officers Natal and Mogula were aware of an outstanding order of protection against Kanderskaya. "In cases involving arrests for violating a protective order, courts in this circuit have found that the arresting officer's awareness of the protective order is itself a significant factor in establishing probable cause." *See Carthew*, 709 F. Supp. 2d at 197 (collecting cases). In this case, the existence of the order of protection supported Natal and Mogula's reliance on Salem's phone calls, since it lent credibility to Salem's claim that he had been threatened.

---

[3] Drawing reasonable inferences in Kanderskaya's favor, I assume that Kanderskaya described the contents of the video to Mogula.

9

These situations of domestic violence and conflicting accounts as to who is a perpetrator pose difficult problems for the police. The police cannot just walk away from the situation on the grounds of opposing stories. They cannot conduct mini-trials. *See Brodnicki v. City of Omaha*, 75 F.3d 1261, 1264 (8th Cir. 1996). So they must use their reasonable judgment to decide how to react. The police officers acted reasonably in arresting Kanderskaya for threatening her husband, a condition recognized by the order of protection against Kanderskaya issued by the New York State Courts. The husband's complaints gave the police officers reasonable cause to arrest Kanderskaya, and they were sufficiently credible to be believed. And where there is probable cause, it is not a court's job to second guess the arresting officer's assessment of the facts on the ground.

Since Salem's phone calls to the NYPD provided the police officers with probable cause to arrest and prosecute Kanderskaya, her § 1983 claims against the officers are dismissed with prejudice.

### C. Section 1983 claims against the City:

I also dismiss Kanderskaya's claim against the City with prejudice. A claim against a municipality under *Monell v. Department of Social Services*, 436 U.S. 658 (1978), must be premised on a deprivation of constitutional rights and, since the officers arresting Kanderskaya acted with probable cause, Kanderskaya has not alleged any such deprivation.

### D. State Law Claims:

Kanderskaya's remaining claims arise under state law. As to those, 28 U.S.C. § 1367(c)(3) states, in relevant part, that "[t]he district courts may decline to exercise supplemental jurisdiction over a [state-law claim] if ... the district court has dismissed all claims over which it has original jurisdiction." The decision whether to exercise supplemental jurisdiction over the

remaining state-law claims is left to the court's discretion. *Phillips v. Audio Active Ltd.*, 494 F.3d 378, 392 (2d Cir.2007). "[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors ... will point toward declining to exercise jurisdiction over the remaining state-law claims." *Kolari v. New York-Presbyterian Hosp.*, 455 F.3d 118, 122 (2d Cir. 2006) (quoting *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n. 7 (1988)). As this is the usual case, I decline to exercise supplemental jurisdiction over Kanderskaya's remaining state-law claims and dismiss those claims, without prejudice.

## CONCLUSION

For the foregoing reasons, the Defendants' motion to dismiss is granted. Kanderskaya's claims against Kelly are dismissed with prejudice. Her federal claims against Pereira, Natal, Mogula, and the City are dismissed with prejudice and her state law claims against those defendants are dismissed without prejudice. The Clerk is instructed to mark the case closed.

SO ORDERED.

Dated: New York, New York
April __, 2014

ALVIN K. HELLERSTEIN
United States District Judge

11